UNITED STATES of America,
Appellant,

v.

DWYER LUMBER & PLYWOOD CO.,
an Oregon corporation, Appellee.

No. 19969.

United States Court of Appeals
Ninth Circuit.

Dec. 6, 1965.

John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Richard S. Salzman, Attys., Dept. of Justice, Washington, D. C.; Sidney I. Lezak, U. S. Atty., Portland, Or.; for appellant.

Charles J. Strader, Thomas H. Tongue, Hicks, Tongue, Dale & Strader, Portland, Or., for appellee.

Before MERRILL, KOELSCH and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

This case involves construction of a contract for sale of standing timber by the United States. The District Court for the District of Oregon ruled that the contract was ambiguous and construed it against the United States. Assigning that ruling as error, the United States has appealed.

In sales of standing timber it is the practice of the United States to impose upon the purchasers the responsibility for constructing all necessary logging roads but to permit them to deduct from their payments for the timber, as an offset, the cost of such construction as estimated by the Government at the time of sale. Contracts are let on the basis of bids made at public auction. Bids are made after the bidder has been furnished with a prospectus of the timber offering and a copy of the form of contract to which the bids will be directed. The contract specifies the amount of road construction cost which is allowable as an

offset and the rate at which it may be amortized during the course of the contract. Bids are made on what the contract calls the "tentative rate," which is the sale price per thousand board feet less the specified amortization rate. The effect of this arrangement is that when the specified road construction cost has been fully amortized the "tentative rate" is increased by the "amortization rate" —the amount which had theretofore been allowed as an offset. The contract here in question expressly so provided. It reads:

"The tentative rate for each species-product will be increased by the amortization rate in effect for that species-product when the unamortized estimated cost of the roads and bridges listed in Section 10b-1 has been amortized by timber scaled or released for cutting.

The unamortized estimated costs of roads and bridges listed in Section 10 b-1 and the amortization rates are:

Unamortized estimated $5,372.00

Amortization rates:
   Douglas fir and western white pine........ $14.12
   Western hemlock and other species .......... 5.79"

This contract related to an offering in 1962. For some time prior to that date it had been the Government practice so to calculate its amortization rate as to amortize road costs over 100 per cent of the estimated cutting, with the result that the tentative rate would not be increased by the amortization rate unless and until the purchaser had logged the full amount of the cutting as the Government had estimated it. The increased rate would apply only to the excess cutting over the estimate.

In 1962 the Government adopted the practice of amortizing the estimated road costs over 80 per cent of the estimated cutting. This raise in amortization rate was to the purchaser's advantage, since, by providing for earlier amortization, it gave added assurance that he would get full benefit of the offset. It also had the result, however, of providing for an earlier increase in the tentative rate. The Government gave no notice of this change in practice other than through the contract provision above quoted.

Appellee was the successful bidder on the 1962 offering and received the contract of sale. It proceeded with its cutting, making payments pursuant to the contract's tentative rate. After the specified amount of road costs had been fully amortized the Government demanded payment at the increased rate. Appellee protested but paid, and then brought this action to recover what it contends was an overcharge in the sum of $1,254.-36.

Appellee asserts that it was accustomed to the former practice and unaware of the change, and that in bidding upon the "tentative rate" it did so upon the assumption that the price bid would be all that it would have to pay for the full amount of the cutting as estimated; that there would be no increase in rates until that extent of cutting had been reached. It contends that the contract was ambiguous in this respect, since the truth could only be ascertained by trial-and-error experimenting with the specified amortization figures.

The District Court ruled in its favor. In its opinion it stated:

"* * * the Government asserts that if the prospective purchaser multiplied the estimated quantity of Douglas Fir by the amortization rate of Douglas Fir and multiplied the estimated quantity of Western Hemlock by the amortization rate of Western Hemlock, it would have discovered that the amount exceeded the unamortized estimated cost, and that inquiry would have revealed that the amount of unamortized estimated cost was based on 80 per cent of the total.

In spite of the rigid standards which the Government may impose on people doing business with it, in my opinion to expect prospective purchasers to engage in this type of

discovery goes far beyond anything that the Government may properly require.

I find that plaintiff's interpretation of Section 3a3 was reasonable and proper."

 In our judgment the court was in error. The contract upon its face was perfectly clear. By adopting appellee's interpretation the court necessarily increased the "unamortized estimated cost figure," unambiguously specified in the contract at $5,372, to the figure $7,613.-55, which is nowhere to be found in the writing. If misunderstanding existed it resulted not from the language of the contract but from the purchaser's assumptions based upon its prior experience. Unquestionably it would have been good practice for the Government to give notice of its change in practice as added assurance that the bidders would fully understand what they were bidding on (and we understand that such notice has now been given). However, we are unable to conclude that it had a duty to do so in the light of the unambiguous contract provisions. It was not unreasonable to expect that a prudent and experienced logging company would check all calculations and cost factors before bidding.

In the alternative, appellee supports the District Court judgment upon the ground of reformation. It contends that equity requires that the contract be reformed by increasing the unamortized estimated cost figure. This contention is based upon the fact that conduct of the Government auctioneer at the time of the sale served to reinforce appellee's assumption. During the auction when a bid was made in terms of tentative rate the auctioneer multiplied it by the total number of board feet (in thousands) contained in the Government's estimate of the offering and extended and announced the resulting figure. This was the precise figure that appellee had in mind as total purchase price for the estimated cutting and appellee contends that this demonstrates that the Government agent either was suffering from the same

misconception or had knowledge of appellee's misconception.

The Government points out, however, that the purpose of the auctioneer's calculation and extension was not to inform the bidders of the total amount of purchase price. It was a short-cut means of ascertaining what was the high bid, since two types of timber at two different tentative rates were being bid on and a bid in term of tentative rates would not alone be sufficiently informing.

The act of the auctioneer was, then, far too equivocal to give rise to any reasonable inference that he did not understand the terms of the contract he was dealing with or that he knew that the bidders did not understand it.

The record, then, could not support a finding either of mutual mistake or of unilateral mistake known to the United States. Reformation thus is unavailable.

Judgment reversed.